**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARTIE DUFUR, | |
| *Plaintiff*, | |
| v. | Civil Action No. 18-2156 (RDM) |
| U.S. PAROLE COMMISSION, | |
| *Defendant*. | |

**MEMORANDUM OPINION**

This is the second case that Plaintiff Artie Dufur has brought in this Court relating to his

efforts to obtain parole from the life sentence he is serving for murdering a U.S. Customs

Inspector in 1979.  In the first case, Dufur alleged that the U.S. Parole "Commission's [2016]

decision to deny him mandatory parole violated various statutory, regulatory, and constitutional

provisions." *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 12–13 (D.D.C. 2018) ("*Dufur

I*").  The Commission moved to dismiss for failure to state claim, and, after concluding the

Commission had waived any habeas-channeling defense that it might otherwise have had, the

Court agreed that Dufur had failed to state a claim and, accordingly, dismissed the complaint.  *Id*.

at 16–27.  In this case, Dufur challenges the Commission's 2018 decision once again denying

him mandatory parole and scheduling his next interim hearing for June 2020.  Dkt. 1.  The

Commission moves to dismiss or, in the alternative, for summary judgment.  Dkt. 13.  This time,

however, it asserts both a habeas-channeling and a merits defense.

As explained below, Dufur asserts challenges both to the *substance* of the Commission's

2018 decision and to the *process* that led to that decision.  With respect to Dufur's substantive

challenges, the Court concludes that his claims lie in habeas and must be dismissed for failure to

name the warden of the prison where he is currently being held and for improper venue.

Although the Court might, in its discretion, transfer this case to appropriate forum (and might

provide Dufur with an opportunity to add and to serve the proper defendant), it concludes that

transfer would not serve the ends of justice.  Dufur's procedural challenges, in contrast, avoid the

habeas-channeling difficulties posed by his substantive challenges.  They fail, however, on the

merits.

The Court will, accordingly, grant the Commission's motion to dismiss or, in the

alternative, for summary judgment, Dkt. 13, will dismiss Dufur's substantive challenges without

prejudice for improper venue, and will dismiss his process challenges for failure to state a claim

upon which relief can be granted.

## I.  BACKGROUND

The Court recounted much of the relevant background in its prior opinion, *Dufur I*, 314 F.

Supp. 3d at 13–16, and will summarize only those facts and allegations relevant to the pending

motion.

In 1977, Dufur escaped from a California state prison where he was serving a life

sentence for a double homicide.[1]  *Id.* at 13.  In 1979, while a fugitive, he murdered a U.S.

Customs Inspector.  *Id.*  He was later apprehended and convicted for that murder, but before he

could be sentenced, he escaped a second time.  *Id.*  Within days, authorities captured him, and,

on October 17, 1979, he was sentenced to a minimum of ten years and a maximum of life with

the possibility of parole for the murder of the Customs Inspector and for other charges relating to

---

[1]  Because Dufur omits some of the relevant background from his complaint, and because these facts are not subject to reasonable dispute, the Court takes judicial notice of the facts regarding Dufur's 1977 and 1979 escapes from custody, as recounted in *Dufur I*, pursuant to Federal Rule of Evidence 201.  These facts are merely contextual and do not bear on the Court's decision.

his second escape. *Id.* In 2016, Dufur became eligible for mandatory parole, *id.*, which, as the Court explained in *Dufur I*, is not actually mandatory, *id.* at 12. After conducting a hearing, the Commission denied Dufur parole in 2016, concluding (1) that he had seriously violated the institution rules by escaping in 1979, and (2) that there was a reasonable probability that he would commit a crime if released. *Id.* at 14. Either of these bases was sufficient to deny Dufur parole. *See* 18 U.S.C. § 4206(b).

After the Commission's National Appeals Board affirmed the denial, *Dufur I*, 314 F. Supp. 3d at 14, Dufur brought suit in this Court, alleging that the 2016 denial "violated various statutory, regulatory, and constitutional provisions" *id.* at 12. The Commission moved to dismiss his complaint for failure to state a claim. *Id.* at 12–13. In deciding that motion, the Court first considered "whether Dufur's claims sound[ed] in habeas," noting that a federal prisoner, like Dufur, must bring his claim in habeas if "success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Id.* at 16 (quoting *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013)). The Court concluded that it need not decide whether Dufur's claims fell within that habeas-channeling rule, however, because the Commission had not raised that defense, and the channeling rules do not limit the Court's subject-matter jurisdiction. *Id.* On the merits, however, the Court concluded that Dufur had failed to state a claim. *Id.* at 16–26. The Court explained that (1) the Commission had discretion to deny Dufur parole under 18 U.S.C. § 4206(d), *id.* at 19–20; (2) it had complied with the relevant regulations because the "regulations governing parole decisions specifically provide for the continued consideration of the original offense conduct in making parole determination," *id.* at 22; (3) Dufur's procedural due process claim failed because he had "received the process he

was due," *id.* at 26; and (4) Dufur offered "no specific factual support for his [substantive due process] claim, *id.*

On June 15, 2018, the Commission conducted a statutory interim hearing.  Dkt. 1 at 7.

"The purpose of an interim hearing" is for the Commission "to consider any significant

developments or changes in the prisoner's status that may have occurred subsequent to the initial

hearing."  28 C.F.R. § 2.14(a).  Following the hearing, the Hearing Examiner decided that no

circumstances warranted changing the Commission's 2016 decision, *see* Dkt. 1 at 7 (Compl.

¶ 14); Dkt. 13-3 at 40 (Def. Ex. 10), and the Commission affirmed that determination because

"there was a reasonable probability that [Dufur] would commit another crime if released, and

also [because] [he] had seriously violated the rules of the institution as evidenced by the

conviction for escape," Dkt. 13-1at 17.  The National Appeals Board affirmed the Commission's

decision.  *Id.* at 18.

In this suit, Dufur challenges the Commission's 2018 decision on both substantive and

procedural grounds.  Dkt. 1.  The Commission moves to dismiss or, in the alternative, for

summary judgment.  Dkt. 13.

## II.  ANALYSIS

Many of the claims Dufur raises in this case resemble, and at times replicate, claims he

raised—and the Court rejected—in *Dufur I*.  In that case, he alleged, for instance, that the

Commission "violated procedural and substantive due process rights" and requested that the

Court direct the Commission to "hold a hearing adhering to and following the mandatory

language contained in the Constitution . . . the parole laws . . . and the [Commission's]

promulgated policies[.]"  *Dufur I*, No. 17-cv-677 (D.D.C.) (ECF 1) at 1.  Here, Dufur's

complaint raises similar allegations, *see* Dkt. 1 at 1, but adds that the Commission's denial of his

parole violates the U.S. Constitution's Ex Post Facto Clause, *id.* at 2, 12 (Compl. ¶¶ 2, 19), and

that the Commission denied him the opportunity to be represented by counsel of his choice at the

2018 parole hearing, *id.* at 8–9 (Compl. ¶ 15–16).

The Commission argues that because Dufur's claims sound in habeas, venue is improper

in this district.  Dkt. 13-1 at 22–23.  It further argues that, even if Dufur's claims do not sound in

habeas, they fail on the merits and should be dismissed for failure to state a claim.  *Id.* at 24–34.

As explained below, the Court concludes that most, but not all, of Dufur's claims sound in

habeas and that venue is improper in this jurisdiction and concludes that Dufur's remaining claim

fail on the merits.

**A.      Claims Classification**

A federal prisoner must bring a claim in habeas "if success on the merits will necessarily

imply the invalidity of [his] confinement or shorten its duration."  *Dufur I*, 314 F. Supp. 3d at 16

(quoting *Davis*, 716 F.3d at 666) (internal quotations omitted).  A prisoner bringing a habeas

petition ordinarily will face two threshold, procedural requirements.  First, a habeas petition is

subject to "the immediate custodian rule," which requires that the petitioner "name as the

respondent 'the person who has custody over him.'"  *Id.* at 17 (quoting 28 U.S.C. § 2242).

Second, the territorial jurisdiction rule requires that the prisoner "file the petition in the district of

confinement."  *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *see also Lane v. United

States*, No. 14-cv-731, 2015 WL 6406398, at *3–4 (D.D.C. Oct. 21, 2015) (explaining the

immediate custodian and territorial jurisdiction rules).  Applying these rules here, if Dufur's

claims "necessarily impl[y] the unlawfulness" of his federal custody, *Wilkinson v. Dotson*, 544

U.S. 74, 81 (2005), then the Commission is not the proper defendant, and venue is not proper in

this Court because Dufur was incarcerated in West Virginia when he filed this action, *see* Dkt. 1 at 1.

Read liberally, Dufur's complaint can be read to bring six claims. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that a *pro se* complaint should not be held to the stringent standards applicable to pleadings filed by counsel). He alleges that the Commission unconstitutionally or unlawfully (1) used his 1979 escape as "pretext to deny" him mandatory parole, Dkt. 1 at 7–8 (Compl. ¶ 14); (2) converted his sentence of "[l]ife with the possibility of parole[] into a sentence of [l]ife without the possibility of parole," *id.* at 10 (Compl. ¶ 17); (3) violated Bureau of Prison regulations by declining to award him "extra good time credits," *id.* at 10–11 (Compl. ¶ 18); (4) acted arbitrarily and capriciously by denying him mandatory parole on the grounds that his 1979 escape constituted a "'serious' and 'frequent' rule violation[]," *id.* at 11–12 (Compl. ¶ 19); (5) "abrogated the Interstate Agreement on Detainers," 18 U.S.C., app. 2, § 2, Dkt. 1 at 12–13 (Compl. ¶ 20), which he alleges requires his release into the custody of the State of California, *see id.* at 13 (Prayer for Relief ¶ C); and (6) unfairly required that his counsel appear in person while permitting law enforcement witnesses to testify by "video conferencing," *id.* at 8–10 (Compl. ¶¶ 15–16). Although some of these allegations are cloaked in "procedural terminology," most "fall squarely within the bounds of the habeas channeling rule." *Thompson v. Cushwa*, No. 17-cv-2603, 2020 WL 1140688, at *10 (D.D.C. Mar. 9, 2020).

Dufur premises his first, second, and fourth claims on the theory that, by considering his 1979 escape and denying him parole on that basis, the Commission violated the Ex Post Facto Clause and applicable statutes and regulations. *See* Dkt. 1 at 11–12 (Compl. ¶ 19). These claims do not posit merely that the "procedures [employed by the Commission] were wrong" but, rather, that the Commission's decision to deny him mandatory parole was "undeserved[] as a

substantive matter." *Edwards v. Balisok,* 520 U.S. 641, 645 (1997).  Similarly, his Interstate

Agreement on Detainers claim rests on the notion that he has "satisfied [his] federal sentence

[and is] entitle[d] . . . to mandatory release to the State of California."  Dkt. 1 at 13 (Prayer for

Relief ¶ C).  Thus, if successful, these claims would necessarily invalidate or shorten his term of

federal confinement and, accordingly, must be brought, if at all, in habeas.  *See Edwards*, 520

U.S. at 645.  Likewise, habeas is the "necessary vehicle," *Thompson v. Bureau of Prisons*, No.

15-cv-1190, 2016 WL 1312003, at *3 (D.D.C. Apr. 4, 2016), for Dufur's claim that the

Commission denied him "goodtime credit which should have reduced the length of [his] federal

incarceration," Dkt. 1 at 11 (Compl. ¶ 18); *see Thompson*, 2016 WL 1312003, at *3 (concluding

that a prisoner was required to bring his claim seeking the restoration of good-time credits in

habeas).

The one claim that Dufur raises that would not, if successful, necessarily end or shorten

his term of federal confinement, *Dufur I*, 314 F. Supp. 3d at 16, is his claim that the Commission

unfairly required his representative of choice to appear in person while permitting law

enforcement witnesses to appear by video conference, *see* Dkt. 1 at 8–10 (Compl. ¶¶ 15–16).

Although the line between procedural violations that sound in habeas and those that do not is at

times hazy, *compare Edwards*, 520 U.S. 641 (prisoner's allegations of bias on part of a hearing

officer sounded in habeas), *with Wilkinson*, 544 U.S. 74 (challenge to the constitutionality of

state parole procedures was not required to be brought in habeas), this alleged procedural

violation falls on the non-habeas side of the line.  A favorable judgment would not "necessarily"

result in an immediate or speedier release from federal custody, *Wilkinson*, 544 U.S. at 82, and,

instead, success would mean only a new interim hearing at which the Commission may decide to

change its initial determination.

This conclusion follows from the nature of an interim hearing.  Under applicable regulations, a prisoner denied parole mandatory parole "shall serve until the expiration of his sentence less good time."  28 C.F.R. § 2.53.  Although a denial means that the prisoner must be incarcerated until his sentence expires, the statute also requires that the Commission conduct an interim hearing either every eighteen months or every twenty-four months, depending on the length of the prisoner's sentence.  *See* 18 U.S.C. § 4208(h).  The purpose of an interim hearing, however, is not to review the initial decision *de novo*.  *See Furnari v. Warden*, 218 F.3d 250, 255 (3d Cir. 2000).  Rather, "all items which bear upon the parole decision are [to be] considered at the initial determination proceeding" and subsequent interim hearings should "focus upon those items which have changed, or which may have changed, in the intervening time."  *United States ex rel. Metro v. U.S. Parole Comm'n*, 613 F.2d 117, 119 (5th Cir. 1980) (quoting the Joint Explanatory Statement of the Committee of Conference, House Conf. Rep. No. 94-838, 94th Cong., 2d Sess., Reprinted in (1976) U.S. Code Cong. & Admin. News, pp. 351, 363).  Consistent with that scope and purpose, the regulation implementing § 4208(h) provides that the purpose of an interim hearing is merely to "consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing."  28 C.F.R. § 2.14(a); *see also* Dkt. 13-3 at 40.

Because Dufur's interim hearing addressed only whether to change the Commission's initial decision, invalidating its findings on procedural grounds would not invalidate the Commission's initial determination, which is the basis for his federal confinement.  Instead, it would mean only that the Commission must conduct another interim hearing at which it would decide whether to alter its initial decision.  As a result, success on his procedural claim would not necessarily end or shorten Dufur's term of federal confinement; to the contrary, the

Commission's initial determination to deny his mandatory parole would remain intact pending

further consideration. Because this procedural claim can be separated from Dufur's substantive

claims, moreover, the Court can entertain it separately without treading on ground properly left

to habeas. *See Serio v. Members of Louisiana State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th

Cir. 1987) (observing that when a habeas petition "combines claims that should be asserted in

habeas with claims that properly may be pursued" as a civils rights action, if "the claims can be

separated, federal courts should do so").

**B.      Substantive Challenges**

As explained above, Dufur should have brought most of his claims in habeas, rather than

action invoking 42 U.S.C. § 1983 (which, in any event, does not apply to claims against a federal

agency) or the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. But, even construing

Dufur's complaint as a habeas petition, the bulk of his claims fail to satisfy threshold procedural

requirements for seeking relief in habeas.

Under the immediate custodian rule, the proper respondent is Dufur's custodian, *see*

*Padilla*, 542 U.S. at 434–35, who is the Warden of the United States Penitentiary in Hazelton,

West Virginia, *see* Dkt. 1 at 1. And, under the territorial jurisdiction rule, a "district court may

not entertain a habeas petition involving present physical custody unless the respondent

custodian is within its territorial jurisdiction." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235,

1239 (D.C. Cir. 2004). Thus, venue lies in the United States District Court for the Northern

District of West Virginia, not in this Court.

When a Court concludes that venue is improper, it may transfer the case to a jurisdiction

in which it could have been brought, if transfer would serve "the interest of justice." 28 U.S.C.

§ 1404(a). Here, the Court will not do so for two reasons. First, with the exception of the

9

procedural claim discussed below, the claims that Dufur attempts to bring in this action are similar, if not identical, to the claims the Court considered and rejected in *Dufur I*. *See Dufur I*, 314 F. Supp. 3d at 17 n.3 (D.D.C. 2018) (finding that it would not be in the interest to dismiss very similar, if not identical claims). Second, although courts have held that transfer is in the interest of justice when the action is misfiled by a plaintiff who, in good faith, "misinterpreted a complex or novel jurisdictional provision," *Bethea v. Holder*, 82 F. Supp. 3d 362, 366 (D.D.C. 2015), this is not such a case. Rather, in *Dufur I*, the Court put Dufur on notice about the potential procedural obstacles he might face if his complaint fell within the habeas channeling rules, and he nonetheless decided to bring his case here.

The Court will, accordingly, dismiss Dufur's substantive challenges to the Commission's 2018 parole decision without prejudice for improper venue.

## C.      Procedural Challenges

Dufur's remaining claim is premised on the following allegations. According to Dufur, he "originally wanted representation [at his 2018 hearing] from a retired staff member of the American Civil Liberties Union Foundation, National Prison Project, Washington, D.C., who agreed to represent him on a *pro bono* basis." Dkt. 1 at 9 (Compl. ¶ 16). He was advised by the Hearing Examiner, however, "that any representative or witness for a prisoner at any parole hearing must be physically present at the place of the hearing," in this case in Hazelton, West Virginia. *Id.* Dufur claims that because of that in-person requirement, his chosen representative "was not able to participate at the hearing," although he notes that his "second choice for representative," his "Case Manager, Mr. McCall," represented him at the hearing. *Id.* Although Dufur's representative was required to appear in person, Dufur alleges (1) that the Hearing Examiner allowed "Agent Beller," a Seattle-based employee of the Department of Homeland

Security, to "testify [at the hearing] *via* video conferencing on behalf of law enforcement" and

(2) that he had not been notified that "Agent Beller would testify at the hearing." *Id.* Dufur

contends that, as a result, he "was purposefully placed at an unfair disadvantage." *Id.*

The Commission moves to dismiss this claim under Rule 12(b)(6) for failure to state a

claim.[2] Dkt. 13. A Rule 12(b)(6) motion is designed to "test[] the legal sufficiency of a

complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Although "'detailed factual allegations'" are not required, the

complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me

allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A *pro se* complaint, "however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Under the governing statute, a "prisoner shall, if he chooses, be represented at the parole

determination proceeding by a representative who qualifies under rules and regulations

promulgated by the Commission." 18 U.S.C. § 4208(d)(2). Dufur alleges that he was deprived

of that right because the Commission informed him that any witness or representative who would

appear on his behalf at the hearing must be physically present and would not be permitted to

---

[2] The Commission moves in the alternative for summary judgment and offers evidence, which
Dufur has not controverted, that he was given the opportunity to continue the hearing to a date at
which his representatives of choice could be present in person and that he knowingly and
voluntarily chose not to do so. *See* Dkt. 13-3 at 38 (Def. Ex. 10). Because the Court will dismiss
this claim under Rule 12(b)(6), it need not—and will not—consider this evidence.

appear by telephone or video.  Dkt. 1 at 9 (Compl. ¶ 16).  The Commission responds that, even

accepting those facts as true, Dufur was not denied his statutory right because the statute does

not confer a right to telephonic or video representation at the parole hearing.  *See* Dkt. 13-1 at 29.

In support, the Commission points to statutory and regulatory provisions that grant hearing

examiners the authority and discretion to manage the conduct of parole hearings.  *See id.* (citing

18 U.S.C. § 4203(c)(2); 28 C.F.R. §§ 2.13(b); 2.23(a); 2.61(a)).

The Court agrees that the governing statute does not grant prisoners a right to telephonic

or video representation, as opposed to in-person representation, at parole hearings.  The statute

merely provides that a "prisoner shall, if he chooses, be represented at the parole determination

proceeding by a representative who qualifies under rules and regulations promulgated by the

Commission."  18 U.S.C. § 4208(d)(2).  It does not provide a prisoner with the right to have his

representative appear by any means the prisoner requests or that the representative finds

convenient.[3]  Dufur has not identified any other authority, and the Court is aware of none,

moreover, that grants a prisoner such a right.

In the face of this difficulty, Dufur pivots to an alternative argument.  In his opposition

brief, he focuses on the contention that the 2018 hearing examiner "violated the statute when [he]

allowed law enforcement officers to appear *via* video conferencing and advocate[]" against him.

Dkt. 17 at 6.  In support of that contention, Dufur points to *Terrell v. United States*, 564 F.3d 442

(6th Cir. 2009), where the Sixth Circuit held that the statute governing mandatory parole

hearings requires that the hearings be conducted in person rather than by video conference, *id.* at

---

[3]  To the extent Dufur intends to press a constitutional due process claim, that claim fails because
there is no constitutional right to have a representative appear by telephone or video, rather than
in person, and because Dufur was given all the process he was due.  *See Dufur I*, 314 F. Supp. 3d
at 26 (observing that due process requires an opportunity for the prisoner to be heard and that the
prisoner receive a statement of reasons for the Commission's decision).

454–55.  But, as the Commission notes, even if *Terrell* were binding on this Court, it stands for only the limited proposition that a prisoner has the right to "appear and testify on his own behalf at the parole determination proceeding," 18 U.S.C. § 4208(e), not that all testifying witnesses must also appear in person.  Indeed, most of the Sixth Circuit's analysis focuses on § 4208(e), *see Terrell*, 564 F.3d at 449–55, which deals exclusively with "[t]he prisoner['s]" appearance at the proceeding, 18 U.S.C. § 4208(e).

To be sure, *Terrell* also states that § 4208(b), which requires that the prisoner receive "written notice of time and place of the proceeding," 18 U.S.C. § 4208(b), contemplates that "all persons participating in the proceeding" are to appear at one place, 564 F.3d at 452.  To the extent *Terrell* held or suggested that all witnesses must appear in person at the hearing—and it is far from clear the court reached that broad conclusion, *see id.* (stating that the statute requires "all of the *parties*" to appear at the place the hearing will be held (emphasis added))—the Court respectfully disagrees.  Section 4108(e) states only that the prisoner has a right "to appear and testify" at the hearing, 18 U.S.C. § 4208(e), and § 4208(b) requires only "written notice" of the "time and place of the proceeding," *id.* § 4208(b).  The statute may well require that the hearing take place as a particular place and that the prisoner be present, but it says nothing about how evidence is to be received.  Here, the hearing was conducted at a particular time and place, and Dufur was present.  Nothing in the statute requires more.

Dufur at least hints at an alternative claim, which posits that the Commission imposed conditions on him—that his representative appear in person—that it did not impose on law enforcement.  *See* Dkt. 17 at 6.  This claim fails for two reasons.  First, Dufur has identified no legal support for the contention that the Constitution demands this type of equal treatment in the presentation of evidence at a parole hearing, and he has failed even to explain his constitutional

13

theory.  *Cf. Dufur I*, 314 F. Supp. 3d at 26 (discussing the measure of constitutional due process

a prisoner is entitled to at a § 4206 hearing).  Second, even assuming that the Constitution

requires equal treatment in the presentation of evidence, Dufur does not allege that he had a

witness who wanted to appear telephonically at his 2018 hearing and was precluded from doing

so.  The Commission's decision to require representatives—but not witnesses—to appear in

person is not an appropriate measure of unequal treatment; representatives and witnesses play

very different roles in administrative proceedings.  Absent an allegation that Dufur was, in fact,

precluded from presenting a witness by video conference, his unequal treatment claim is

untenable.

Finally, to the extent Dufur means to allege that the Commission violated his rights by

failing to notify him that Agent Beller would testify by video conference, *see* Dkt. 1 at 9 (Compl.

¶ 16) (alleging that Dufur "was not aware" that Agent Beller would testify at the hearing), his

claim fails as a matter of law.  The statute requires that, at least thirty days before a "parole

determination proceeding, the prisoner" receive (1) notice of the "time and place of the

proceeding" and (2) "reasonable access to a report or other document to be used by the

Commission."  18 U.S.C. § 4208(b).  It says nothing about advance notification of any witnesses

who will appear, and Dufur has not identified any other statutory or regulatory provision

requiring the Commission to give prisoners advance notice of the witness who will—or who

may—appear at the proceeding.  Moreover, Dufur does not allege that he was unable "to contest

the evidence against" him based on some unfair surprise amounting to a due process violation.

*Cf. Swarthout v. Cooke*, 562 U.S. 216, 219–20 (2011) (holding that state law parole procedures

"were constitutionally sufficient" where the prisoner was "allowed to speak at their parole

hearing," "to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reason why parole was denied").

The Court will, accordingly, dismiss Dufur's procedural challenges for failure to state a claim.

## CONCLUSION

For these reasons, the Court will **GRANT** the Commission's motion to dismiss or, in the alternative, for summary judgment, Dkt. 13.  The Court will dismiss Dufur's claims that sound in habeas without prejudice for lack of venue and will dismiss his remaining claims for failure to state a claim upon which relief can be granted.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 6, 2020